**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1316
_____

CARLOS SALGUERO,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A206-904-809)
Immigration Judge:  Mirlande Tadal

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 14, 2018
Before:  CHAGARES, BIBAS and GREENBERG, Circuit Judges

(Opinion filed: May 2, 2019)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Carlos Salguero, proceeding pro se, petitions for review of an order of the Board of Immigration Appeals (BIA) denying his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We will dismiss the petition in part and deny it in part.

I.

Salguero is a citizen of Guatemala who entered the United States without inspection in 2005. After he was convicted of receiving stolen property, driving under the influence, and other offenses, the Department of Homeland Security (DHS) began removal proceedings, charging him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). Salguero admitted nearly all the factual allegations, and the Immigration Judge (IJ) sustained the charge of removability. Salguero then filed an application for asylum, withholding of removal, and protection under the CAT.

At the merits hearing, Salguero proceeded pro se and testified in support of his claims. Salguero left Guatemala in 2005, at age 18, because of the violence in his country. That violence included the killings of his uncle and cousin, but Salguero was never physically harmed.

Salguero testified that he fears returning to Guatemala because he was assaulted twice in Princeton, New Jersey, by a former housemate named Oscar. Salguero said that the two did not get along, and that the assaults were prompted by a private dispute. Salguero also said that, although the assaults were not gang related, Oscar was an MS-13 gang member. Salguero sustained no serious injuries during the first assault, and did not report it to the police. The second assault resulted in a laceration over Salguero's left eye

2

that required nine stitches. Salguero reported this assault to police, but Oscar apparently fled and Salguero has not seen him since the incident.

Salguero testified that his parents and sister still live in Guatemala. Once, in 2014, Oscar's family and friends threatened Salguero's family in Guatemala. They also threatened to kill Salguero, if he returned, because he had reported Oscar to the police in the United States. Since that incident in 2014, Oscar's family has not had any contact with Salguero's family, and Salguero has not been informed of Oscar's whereabouts.

The IJ determined that Salguero was credible and had provided sufficient corroboration for his claims, but nonetheless denied relief. The IJ found that Salguero's asylum request was time barred because it was not made within a year of arrival or within a reasonable time after the 2013 assault. Salguero's withholding claim was denied by the IJ because Salguero did not demonstrate past persecution in Guatemala, and did not show a clear probability of future persecution on account of a protected ground. The IJ noted that it has been three years since anyone associated with Oscar contacted Salguero's family, that Salguero himself has not been harmed since the 2013 incident, and that any potential harm to Salguero would not be based on a protected ground, as his dispute with Oscar was personal. Additionally, the IJ determined that Salguero failed to establish that the government of Guatemala would not protect him. Finally, the IJ rejected Salguero's CAT claim, because Salguero did not show that he would likely be tortured by or at the acquiescence of the Guatemalan government.

Salguero appealed to the BIA. He sought to modify his claims for relief by identifying himself as a member of a new particular social group based on new evidence

3

that Oscar had assaulted him for refusing to join the MS-13 gang. The BIA concluded that Salguero could not raise this issue for the first time on appeal. The BIA then affirmed the IJ's denial of Salguero's withholding and CAT claims.[1] Relying on the IJ's analysis, the BIA determined that Salguero had not established past persecution or a clear probability of future persecution on account of a protected ground. The BIA affirmed the IJ's denial of Salguero's CAT claim.

In his appeal to the BIA, Salguero also argued that the IJ had erred by failing to inform Salguero of his potential eligibility for a U Visa, see 8 U.S.C. § 1101(a)(15)(U), and by failing to grant a continuance. The BIA denied this claim because Salguero did not show prima facie evidence of his eligibility for a U Visa and had never sought a continuance. The Board noted that Salguero could, in any event, pursue a U Visa petition through the U.S. Citizenship and Immigration Services (USCIS). Salguero did not present any other due process claims to the BIA. This petition for review followed.

II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). We review both the IJ's and BIA's decisions where, as here, the BIA issued its own opinion that "invoke[d] specific aspects of the IJ's analysis and fact-finding in support of [its] conclusions." Green v. Att'y Gen. U.S., 694 F.3d 503, 506 (3d Cir. 2012) (alteration in original) (quoting Voci v. Gonzales, 409 F.3d 607, 613 (3d Cir. 2005)). We review the agency's legal conclusions under a de novo standard, but must uphold the agency's factual findings "unless any

---

[1] Salguero did not challenge the IJ's denial of his application for asylum.

4

reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C.

§ 1252(b)(4)(B); see also Mendoza-Ordonez v. Att'y Gen. U.S., 869 F.3d 164, 169 (3d

Cir. 2017).

III.

Salguero raises two arguments regarding his withholding and CAT claims.[2] First,

he argues that the agency erred in determining that he had failed to show past

persecution, a clear probability of future persecution, or a likelihood that he will be

tortured if he is returned to Guatemala. Second, he argues that the BIA erred in denying

his request to raise a new particular social group claim—which Salguero has clarified on

appeal—based on Oscar's gang-related motivations.

To obtain withholding of removal, an alien must show that he will be persecuted,

meaning his "life or freedom would be threatened" upon his removal to a particular

country "because of the alien's race, religion, nationality, membership in a particular

social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); see also Garcia v. Att'y

Gen. U.S., 665 F.3d 496, 505 (3d Cir. 2011). The alien must show a "clear probability"

of persecution, meaning "that persecution would 'more likely than not' occur." Garcia,

665 F.3d at 505 (citations omitted). A showing of past persecution gives rise to a

rebuttable presumption of future persecution. Id. The alien must "show a sufficient

---

[2] Salguero has waived any arguments regarding his asylum application by failing to present them in his brief. See Chen v. Ashcroft, 381 F.3d 221, 235 (3d Cir. 2004). Even if he were to challenge the agency's determination that his asylum application was untimely, we would likely lack jurisdiction to review that claim. See Sukwanputra v. Gonzales, 434 F.3d 627, 633 (3d Cir. 2006).

5

'nexus' between persecution and one of the listed protected grounds." Ndayshimiye v. Att'y Gen. U.S., 557 F.3d 124, 129 (3d Cir. 2009).

Substantial evidence supports the agency's determination that Salguero failed to show that he suffered past persecution, as he testified that he was never personally harmed in Guatemala on account of a protected ground. Substantial evidence also supports the agency's determination that Salguero failed to establish a clear probability of future persecution in Guatemala. Salguero presented evidence of a single threat—issued over three years ago—that he would be harmed if he returned to Guatemala. See generally Voci, 409 F.3d at 615 (noting that isolated incidents generally do not rise to the level of persecution); Li v. Att'y Gen. U.S., 400 F.3d 157, 164-65 (3d Cir. 2005) (noting that threats, standing alone, qualify as persecution in a small category of cases). Salguero admitted that he has not heard from Oscar since then. This record does not compel a conclusion contrary to the agency's determination about the likelihood of future persecution.[3]

Salguero's CAT claim fails for similar reasons. An alien seeking relief under the CAT must demonstrate that it is "more likely than not" that he will be tortured in the

---

[3] Accordingly, we need not reach the BIA's alternative holdings, including those grounded in nexus and the particular social group that Salguero argued to the IJ. We also need not reach Salguero's claims premised on a new formulation of the particular social group. In any event, we note, the BIA may decline to reach legal arguments that were not raised before the IJ. See, e.g., Pinos-Gonzalez v. Mukasey, 519 F.3d 436, 440 (8th Cir. 2008); Torres de la Cruz v. Maurer, 483 F.3d 1013, 1023 (10th Cir. 2007). We note, too, the force of the BIA's reliance on Salguero's testimony that his disagreements with Oscar stemmed from personal disputes. See Ndayshimiye, 557 F.3d at 132 (citing Amanfi v. Ashcroft, 328 F.3d 719, 724 (3d Cir. 2003) (no persecution based on a "private dispute")).

event of return to a designated country. 8 C.F.R. § 1208.16(c)(2). The agency's determination that Salguero has not met this standard, based on the same set of facts, is supported by substantial evidence.

Salguero next argues that he was denied due process because the IJ failed to advise him that he could apply for a U visa. IJs have a duty to inform aliens appearing before them of their potential eligibility for certain forms of relief. Bonhometre v. Gonzales, 414 F.3d 442, 448 (3d Cir. 2005) (noting BIA authority for the proposition that "[a]n IJ has a duty to inform aliens of potential forms of relief for which they are apparently eligible"). But eligibility for a U visa falls outside the IJ's authority; as the BIA noted, USCIS has exclusive jurisdiction over U visas. See 8 C.F.R. § 214.14(c)(1); see also Sunday v. Att'y Gen. U.S., 832 F.3d 211, 213 (3d Cir. 2016).[4] The filing of an application for a U visa has no effect on DHS's authority to execute a final removal order, see § 214.14(c)(1)(ii), and if a U visa application is approved, the alien can move to reopen and terminate the removal proceedings, see § 214.14(c)(5)(i). Thus, the IJ's failure to inform Salguero of his eligibility for a U visa did not affect his ability to seek or obtain such relief. Accordingly, Salguero cannot establish a viable due process claim. See Bonhometre, 414 F.3d at 448 (requiring a showing of substantial prejudice to prevail on a due process claim like this).[5]

---

[4] As the BIA also noted, Salguero had failed to show his prima facie eligibility for a U Visa.

[5] Salguero has waived any issue regarding a continuance because he failed to argue it in his brief. See Chen, 381 F.3d at 235. Moreover, we note that Salguero never sought a continuance to pursue a U Visa, and has never alleged that he is pursuing a U Visa with USCIS. Cf. Matter of Sanchez Sosa, 25 I. & N. Dec. 807, 812-16 (BIA 2012). Thus, the

7

The remainder of Salguero's petition raises due process claims that he never presented to the BIA.[6]  We have jurisdiction to review only claims that have been exhausted before the BIA.  See 8 U.S.C. § 1252(d)(1); Lin v. Att'y Gen., 543 F.3d 114, 119-21 (3d Cir. 2008).  Because Salguero did not raise these remaining due process claims before the BIA, we lack jurisdiction to consider them.  See Zheng v. Gonzales, 422 F.3d 98, 107-08 (3d Cir. 2005).  Salguero has not argued—and the record does not indicate—that the BIA was incompetent to consider these claims, see Bonhometre, 414 F.3d at 447-48, or that there are any other grounds to excuse exhaustion or to deem the claims exhausted, see Lin, 543 F.3d at 119-24.  Thus, we will dismiss the petition for review with respect to these claims.

Accordingly, we will dismiss the petition for review in part and deny it in part.

---

BIA did not abuse its discretion in determining that Salguero was not entitled to a continuance to pursue a U Visa under these circumstances.  Cf. Simon v. Holder, 654 F.3d 440, 443 (3d Cir. 2011).

[6] These include claims related to his waiver of counsel, the government's presentation of certain evidence, and the IJ's alleged failure to advise him of the relevant standards of proof.